Robert HOLLON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2008–SC–000618–DG.

Supreme Court of Kentucky.

Nov. 18, 2010.

As Modified on Denial of Rehearing
April 21, 2011.

Dennis James Burke, Assistant Public Advocate, Department of Public Advocacy, LaGrange, KY, Amy Robinson Staples, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

In 1996, a Franklin Circuit Court jury found Robert Hollon guilty of the aggravated murder of Robbin White. In accord with the jury's recommendation, the trial court sentenced Hollon to life in prison without the possibility of parole for twenty-five years. Hollon appealed his conviction and sentence to this Court, and we affirmed in an unpublished Opinion.[1] Dissatisfied with the performance of both his trial and appellate attorneys Hollon, proceeding pro se in 2000, filed a Kentucky Rule of Criminal Procedure (RCr) 11.42 motion in the trial court alleging, among other things, that appellate counsel had rendered ineffective assistance by failing adequately to demonstrate the trial court's error in admitting into evidence Hollon's confession. The motion was subsequently supplemented, both by Hollon and by appointed counsel, to add allegations that appellate counsel failed to raise a due-process challenge to the Commonwealth's use of the burglary aggravator, and failed to make references to the record supportive of Hollon's contention that no burglary had occurred. In April 2007, the Franklin Circuit Court denied Hollon's motion, finding in particular that Hollon's appellate counsel had performed adequately.

Hollon appealed that determination to the Court of Appeals which, without reaching the merits of Hollon's ineffective assistance of appellate counsel claim, affirmed. Noting this Court's policy, first announced in *Hicks v. Commonwealth*, 825 S.W.2d 280 (Ky.1992), refusing to recognize ineffective assistance of appellate counsel (IAAC) claims in cases that have been decided upon a merits review, the Court of Appeals panel ruled that Hollon's IAAC claim was properly dismissed because it was not cognizable by the trial court. The panel nevertheless joined other panels of our Court of Appeals[2] and at least one panel of the United States Court of Ap-

1. *Hollon v. Commonwealth*, 1996–SC–000382–MR (Ky. Dec. 17, 1998).

2. *Lofton v. Commonwealth*, No.2002–CA–001550–MR, 2004 WL 178388 (Ky.App. Jan. 30, 2004); *Payne v. Commonwealth*, No.2003–CA–000380–MR, 2004 WL 691208 (Ky.App. April 2, 2004).

peals for the Sixth Circuit[3] in urging us to reconsider our Hicks policy as incompatible with, or at least as out of harmony with, United States Supreme Court precedent.

We granted Hollon's motion for discretionary review to reexamine whether IAAC claims may be prosecuted in the Commonwealth and, if so, how such claims shall be pursued. Today we conclude that our courts should address such claims and that generally the proper avenue for asserting them will be the one Hollon chose: a motion pursuant to RCr 11.42 to vacate or set aside the underlying judgment.

## ANALYSIS

### I. The Right to the Effective Assistance of Appellate Counsel Extends Beyond Counsel's Mere Filing of a Merits Brief.

 As Hollon correctly notes, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and through it the Sixth Amendment, entitle criminal defendants to the effective assistance of counsel not only at trial, but during a first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). *See generally Mason v. Hanks,* 97 F.3d 887 (7th Cir.1996). In *Evitts,* a case from Kentucky, Keith Lucey was convicted of trafficking in a controlled substance, and his retained attorney filed a timely notice of appeal to the Court of Appeals. The attorney failed, however, to file the then-mandatory statement of appeal, and consequently our Court of Appeals granted the Commonwealth's motion to dismiss the appeal. Through habeas review, the case found its way to the United States Supreme Court, and before that Court it was conceded that defense counsel's failure to file the mandatory form

constituted ineffective assistance. The Supreme Court held that the Kentucky Court of Appeals' refusal to consider the merits of Lucey's appeal solely on the ground of counsel's deficient performance denied Lucey the due process of law.

A few years later, this Court was confronted with an IAAC claim somewhat different from the one the United States Supreme Court had addressed in *Evitts.* In *Hicks v. Commonwealth, supra,* following his direct appeal, the merits of which were considered and decided adversely to him, Glen Hicks moved for relief pursuant to RCr 11.42, and alleged that appellate counsel was ineffective because he had failed to raise various issues for consideration on direct appeal. The trial court denied relief, and on appeal to this Court we acknowledged *Evitts,* but read it narrowly as requiring only the reinstatement of an appeal which had been dismissed as a result of counsel's ineffectiveness. Hicks's claim did not implicate that requirement. Moreover, this Court found

> a substantial difference in the situation of a convicted defendant for whom no appeal was even taken or one whose appeal was dismissed solely due to neglect of counsel and the situation of a defendant whose appeal was completely processed and the judgment affirmed. In the first case, there was never any consideration of the merits of any substantive issue by the appellate court. In the latter case, the appellate court has considered and decided the merits of the appeal.

*Hicks,* 825 S.W.2d at 281. The *Hicks* Court concluded that we would not "examine anew an appeal reviewed, considered and decided by this Court." *Id.* Since then, we have refused to recognize the *Hicks*-type of IAAC claim and have upheld

---

**3.** *Boykin v. Webb,* 541 F.3d 638 (6th Cir. 2008).

*Hicks*'s narrow reading of *Evitts* several times. Upon further consideration of *Evitts* and its progeny in state and federal courts, we can no longer subscribe to this overly limited view of the mandate of *Evitts v. Lucey,*

Technically, perhaps, the United States Supreme Court's holding in *Evitts* can be limited to the facts then before the Court, but the Court's explanation of its ruling simply does not support such a minimalist reading. As the United States Supreme Court explained,

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake. To be sure, respondent did have nominal representation when he brought his appeal. But nominal representation on an appeal as of right—like nominal representation at trial—does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all.

469 U.S. at 396, 105 S.Ct. 830. There is no distinction implicit in this explanation between, on the one hand, counsel's procedural missteps that result in dismissal of an appeal and, on the other hand, deficiencies rendering a potentially favorable appeal substantively meritless. Indeed, the Court noted that while Lucey's case involved procedural mistakes, other cases dealing with the right to counsel—trial or appellate—had focused on the defendant's

need for substantive assistance, for " 'counsel's examination into the record, research of the law, and marshalling of arguments on [the client's] behalf.' ". *Id.* at 394 n. 6, 105 S.Ct. 830 (quoting *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), brackets in original).

The Supreme Court elaborated upon a defendant's right to the effective assistance of appellate counsel in *Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), a case in which the defendant's appeal had been dismissed as frivolous. The Court reiterated that on a first appeal as of right, " [d]ue process . . . [requires] States . . . to offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal.' " 528 U.S. at 277, 120 S.Ct. 746 (quoting from *Evitts,* 469 U.S. at 405, 105 S.Ct. 830 (brackets and ellipses in original)). That requirement, the Court explained, citing *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), does not prohibit the States from dismissing frivolous appeals. However, it does prohibit such a dismissal except where a defendant has had the assistance of counsel to find non-frivolous grounds for appeal, and then, upon counsel's reasoned conclusion that no such grounds exist, the appellate court has independently determined that counsel's conclusion is warranted.

Technically, therefore, *Smith,* like *Evitts,* addresses the right to counsel to ensure that an appeal of right is not improperly dismissed so as to frustrate an adjudication on its merits. Relying on this technical distinction between cases, such as *Smith* and *Evitts,* in which no merits brief was filed, and cases in which a merits brief has been filed and ruled upon, we have upheld our *Hicks* ruling even in the wake of *Smith. See, e.g., Parrish v. Commonwealth,* 272 S.W.3d 161 (Ky.2008). *Smith,*

however, even more than *Evitts*, strains that distinction beyond what it can reasonably bear. *Smith* held that defendants pursuing a first appeal as of right are entitled to counsel's effective assistance in identifying non-frivolous grounds for appeal as well as counsel's effective assistance in briefing and otherwise presenting an appeal based on those grounds. The standard for evaluating claims that appellate counsel was ineffective, the Court held, is the familiar "deficient-performance plus prejudice" standard applied to claims of ineffective trial counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> Respondent [defendant] must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [defendant] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith*, 528 U.S. at 285, 120 S.Ct. 746. If the failure to file a merits brief can constitute ineffective assistance, it would seem to follow that the filing of a merits brief that is grossly inadequate because it fails altogether to raise a meritorious issue could do the same.

 Not surprisingly, therefore, although in *Smith* the United States Supreme Court did not have before it an ineffective assistance of appellate counsel claim based on an assertedly deficient merits brief, the sort of claim this Court had before it in *Hicks*, the vast majority of courts has recognized that the right to the effective assistance of appellate counsel examined in the no-merits-brief circum-stances of *Smith* extends naturally and by necessary implication to the merits-brief situation. Gregory G. Sarno, Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Appellate and Postconviction Remedies*, 15 A.L.R.4th 582 (1982). More is required of appellate counsel than merely filing a brief. The *Smith* court itself observed that while

> appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal . . . it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.

528 U.S. at 288, 120 S.Ct. 746. This statement by the United States Supreme Court clearly indicates that our *Hicks* distinction between merits-brief and no-merits-brief cases has no constitutional foundation, but rather undercuts a defendant's constitutional right to counsel's effective assistance in preparing a merits brief.

 We are thus persuaded that it is time, indeed past time, to overrule *Hicks* and the cases relying upon it and to recognize IAAC claims premised upon appellate counsel's alleged failure to raise a particular issue on direct appeal. To succeed on such a claim, the defendant must establish that counsel's performance was deficient, overcoming a strong presumption that appellate counsel's choice of issues to present to the appellate court was a reasonable exercise of appellate strategy. As the Supreme Court noted in *Smith*, " '[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome.' " 528 U.S. at 288, 120 S.Ct. 746 (*quoting Gray v. Greer*, 800 F.2d 644,

646 (7th Cir.1986)). We further emphasize "ignored issues" to underscore that IAAC claims will not be premised on inartful arguments or missed case citations; rather counsel must have omitted completely an issue that should have been presented on direct appeal. For further clarity, we additionally emphasize that IAAC claims are limited to counsel's performance on direct appeal; there is no counterpart for counsel's performance on RCr 11.42 motions or other requests for post-conviction relief. Finally, the defendant must also establish that he or she was prejudiced by the deficient performance, which, as noted, requires a showing that absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded. *Smith, supra.*

## II. Merits–Based IAAC Claims Should Be Raised in the Trial Court Pursuant to RCr 11.42.

Having determined that Kentucky courts are to recognize IAAC claims in cases where the direct appeal has been decided on the merits, we must now consider how such claims are to be raised. As we have noted several times over the years, our rules governing review of a trial court's final judgment in a criminal case are meant to be organized and complete. The rules related to direct appeals, RCr 11.42, and Kentucky Rule of Civil Procedure (CR) 60.02 collectively create a structure that "provides for wide-ranging opportunities for a defendant to challenge in all respects the legality and fairness of his conviction and sentence." *Foley v. Commonwealth,* 306 S.W.3d 28, 31 (Ky.2010). At each stage in this structure the defendant is required to raise all issues then amenable to review, and generally issues that either were or could have been raised at one stage will not be entertained at any later stage. *Gross v. Commonwealth,* 648 S.W.2d 853 (Ky.1983). This structure, wide-ranging but also finite and complete, is an attempt to balance society's and the defendant's interest in just and accurate criminal convictions with society's and the court's interest in the ultimate finality of judgments. Because the completeness of the current structure is one of its principal attributes, we look first to see if IAAC claims fit naturally at some point within it.

Obviously, IAAC claims cannot be raised in the direct appeal, since it is precisely counsel's assistance with that now-concluded appeal that is at issue. Hollon brought his IAAC claim as part of his post-conviction motion pursuant to RCr 11.42. That rule permits "[a] prisoner in custody under sentence or a defendant on probation, parole or conditional discharge," to move the court that imposed the sentence "to vacate, set aside or correct it," on the ground "that the sentence is subject to collateral attack." The rule does not expressly provide for IAAC claims, and generally it is used to attack alleged infirmities that arose during trial. Nevertheless, courts with rules very similar to ours have construed "collateral attack" broadly to include IAAC claims the gist of which is that a serious infirmity during trial should have received, but owing to appellate counsel's ineffectiveness did not receive, appellate review. *See, e.g., Page v. United States,* 884 F.2d 300 (7th Cir.1989); *State v. Herrera,* 183 Ariz. 642, 905 P.2d 1377 (Ariz.App. 1995); *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977). If, under the approach these courts adopt, the trial court finds ineffective assistance of appellate counsel, it may vacate the judgment of conviction and reenter it, thereby allowing the defendant an appeal in which to raise the neglected issue. *Page, supra.*

These courts answer concerns that such an approach allows the trial court in effect to order the appellate court to grant a new appeal by noting that all RCr 11.42 rulings

create the basis for a new appeal, that rulings granting RCr 11.42 relief reopen judgments that may have been affirmed on appeal, and that IAAC claims do not challenge or require the trial court to pass on the appellate court's decision, but rather on the conduct of appellate counsel. *Id.* The appellate court, moreover, is not bound by the trial court's decision, which, like other RCr 11.42 rulings, is subject to appeal by either party. *Sullivan, supra.* They conclude that there is no incongruity in having the trial court address IAAC claims, and there is the benefit that factual issues, such as possible questions concerning counsel's appellate strategy, may be addressed in the court best able to review them, *i.e.*, the trial court where evidentiary hearings are a normal part of the daily docket.

Other courts, however, have construed rules like our RCr 11.42 as addressed exclusively to errors occurring in the course of trial. An order vacating and reinstating the judgment to permit the appeal of a neglected issue has the effect, these courts conclude, not of setting aside or correcting the judgment as contemplated by the rule, but of setting aside the appellate decision. They hold, accordingly, that a motion in the trial court for postconviction relief is not a proper vehicle for IAAC claims, and require instead an original proceeding in the appellate court where counsel's alleged ineffectiveness occurred. That appellate court is in the best position to judge appellate counsel's performance, these courts maintain, and fact-finding may be assigned to a referee or to the trial court. *See, e.g., Feldman v. Henman*, 815 F.2d 1318 (9th Cir.1987) (holding that IAAC claims must be brought by motion to recall mandate in the appellate court); *State v. Knight*, 168 Wis.2d 509, 484 N.W.2d 540 (1992) (holding that IAAC claims must be brought as habeas actions in the appellate court); *People v. Bachert*, 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987) (holding that IAAC claims must be brought as coram nobis proceedings in the appellate court.).

This Court expressed similar concerns in *Com. v. Wine*, 694 S.W.2d 689 (Ky.1985) where we held that a defendant could not invoke RCr 11.42 on the ground he received ineffective counsel because his right to appeal had been allowed to expire or his appeal had been dismissed. The exclusive remedy in those cases, we said, was to move the appellate court for a belated appeal or to reinstate the dismissed appeal; the appellate court's decision was not to be "litigated anew in the trial court pursuant to RCr 11.42." *Wine*, 694 S.W.2d at 694. We explained that "RCr 11.42 is designed to permit a trial court an opportunity after entry of judgment to review its judgment and sentence for constitutional invalidity of the proceedings prior to judgment or in the sentence and judgment itself. It is not an appropriate remedy for a frustrated appeal." *Id.* We certainly would reiterate that any issue, including the ineffectiveness of counsel, actually decided by the appellate court, whether on motion for reinstatement of a dismissed appeal or on direct appeal, may not be reopened pursuant to RCr 11.42. The trial court does not have jurisdiction to review appellate decisions. Nor do we see any reason to depart from *Wine*'s requirement that one seeking relief from an expired or a dismissed appeal do so by motion in the court with jurisdiction over the appeal. The botched appeal scenario is one instance in which it does not seem unreasonable to expect counsel to admit, if appropriate, a procedural mistake that had the effect of aborting the client's appeal and, in those cases, the appellate court is in the best position to assess whether relief is warranted.

The *Wine* Court did not have before it the *Hicks*-type of IAAC claim, a claim

based on counsel's alleged failure to include in an appeal, the merits of which have already been decided, a glaringly important issue. That sort of claim, we are persuaded, may appropriately be addressed to the trial court pursuant to RCr 11.42, and hence we depart from and overrule *Wine* and its progeny to the extent that they suggest otherwise. The rule encompasses such claims, we believe, because although appellate counsel's performance is being attacked, the basis of the attack is an alleged flaw in the trial proceedings for which appellate counsel neglected to seek relief. The claim then is at root and in essence a collateral attack on the judgment, and RCr 11.42 is, in our comprehensive scheme of post-conviction review, the stage at which such an attack is to be raised. The trial court is no less competent to assess in the first instance the seriousness of the alleged flaw and appellate counsel's reasons, if any, for bypassing a particular issue, than it is to assess trial counsel's alleged miscues and strategic choices, the mainstay of RCr 11.42 litigation.

We agree with those courts discussed above which find no incongruity in the trial court's assessing counsel's appellate performance, since, as those courts note, no appellate decision is being disturbed. *Page v. United States, supra.* By vacating the judgment, the trial court is not reopening the appeal for reconsideration of any issue already decided. It is rather reopening the judgment, as it is authorized under the rule to do, so that a serious but theretofore unaddressed question about its validity may receive appellate review.

We also agree with those courts that the trial court is the best place for consideration of the *Hicks*-type of IAAC claim to start. Not only is the trial court better able than the appellate court to address questions of fact, but there are obvious efficiencies to be gained by having both appellate and trial ineffective assistance claims addressed in a single proceeding. From a practical standpoint, the consolidation will prevent the delays and confusion that would result from separate courts, trial and appellate, needing the same case record simultaneously. It will also spare defendants and post-conviction counsel possibly difficult choices about which ineffectiveness claim, trial or appellate, to pursue first and the impact of that choice on the timeliness with which the other claim is pursued.

We hold, therefore, that *Hicks*-type IAAC claims may henceforth be pursued by motion in the trial court of conviction under RCr 11.42. Our ruling is to have prospective effect only. It applies to this case, to cases pending on appeal in which the issue has been raised and preserved, and to cases currently in or hereafter brought in the trial court in which the issue is raised. Prospective application is appropriate because, although our courts have not until now provided a forum for IAAC claims based on an allegedly inadequate appellate brief, the federal courts have provided a forum through habeas review. *See Boykin v. Webb*, supra. Kentucky defendants have not, therefore, been denied an opportunity to vindicate their right to effective appellate counsel, and there is thus no need for our decision today to reach back and operate retroactively.

For clarity, we note some general principles regarding the courts' roles in review of IAAC claims. The trial court will address the IAAC issue under the aforementioned standards entering findings and an appropriate order pursuant to RCr 11.42(6). Once the trial court rules on a defendant's IAAC claim, that court's order will be reviewable in the same manner as orders addressing RCr 11.42 motions are

currently reviewed. *See* RCr 11.42(7) (either movant or Commonwealth may appeal from court's final order on RCr 11.42 motion).

▮ If the trial court finds that the defendant received ineffective appellate assistance and is entitled to relief under the *Strickland v. Washington* standard, as noted above, the trial court should enter appropriate findings and an order vacating the original judgment. We depart from the approach, adopted by some courts, which also requires the trial court to reenter the original judgment so that an appeal of the omitted issue may proceed. Kentucky trial courts should not reenter the original judgment. The matter-of-right appeal guaranteed by § 115 of the Kentucky Constitution has concluded and it is not necessary to reenter the judgment in order for the omitted issue(s) to receive appellate review; any omitted issue or issues will be reviewed as part-and-parcel of the appeal of the trial court's order on the RCr 11.42 motion.

▮ On the appeal of the trial court's order on the RCr 11.42 motion, it is incumbent on the Court of Appeals[4] to review in the first instance the trial court's ruling regarding IAAC. If the Court of Appeals concludes that there was ineffective appellate assistance, then it should proceed to address the omitted issue or issues on which the IAAC claim is based.[5] Should the Court of Appeals conclude that there was no IAAC meriting relief then, of course, it would be unnecessary for that Court to address the issue or issues omitted from the matter-of-right appeal. Any final opinion of the Court of Appeals would, as always, be subject to discretionary review by the Supreme Court pursuant to CR 76.20.

▮ When appellate review of the matter is concluded, either by a final opinion of the Court of Appeals or by a final opinion of this Court after having granted discretionary review, and the defendant does not prevail, any prior vacation of the original judgment will be reversed leaving that judgment intact as originally entered. However, if the defendant prevails on the IAAC claim and an omitted issue justifies relief, the final opinion from this Court or the Court of Appeals will direct the trial court accordingly by either granting a new trial, ordering the correction of the judgment or ordering such other relief as may be appropriate. Through this process, the order on a defendant's post-conviction motion alleging IAAC receives full consideration and any omitted issue which could merit relief is addressed, when appropriate, in the appellate review of the RCr 11.42 ruling.

As a final note, we recognize that if a trial court concludes that a defendant received ineffective assistance of appellate counsel and vacates the judgment, the aforementioned procedure provides for effective final resolution in all but potentially one instance. If the Commonwealth, for whatever reason, failed to appeal timely the trial court's order granting RCr 11.42 relief, the matter would be in a legal limbo of sorts, with a vacated judgment but no appellate ruling on either the IAAC claim or the omitted issue(s) necessary to the determination of whether the defendant is

---

4. If the case resulted in imposition of the death penalty, of course, the appeal of the RCr 11.42 ruling would come directly to this Court. *Leonard v. Commonwealth,* 279 S.W.3d 151 (Ky.2009).

5. We recognize that these inquiries, IAAC and the merits of the omitted appellate issue(s), are intertwined but they are, nevertheless, separate determinations.

entitled to some form of relief.[6] Accordingly, pursuant to our rulemaking authority, the Court amends RCr 11.42(7) as follows:

> (7) Either the movant or the Commonwealth may appeal from the final order or judgment of the trial court ~~in a proceeding~~ *on a motion* brought under this rule. *If the trial court finds the movant received ineffective assistance of appellate counsel and the Commonwealth fails to pursue a timely appeal, the movant may appeal the trial court's order by filing a notice of appeal within sixty (60) days after the date of notation of service of the judgment or order under Criminal Rule 12.06(2). If neither party has filed a notice of appeal within this sixty (60) day period, the trial court shall issue to the movant an order to show cause within (10) days why the judgment vacated on his behalf should not be reinstated. If the movant fails to respond within ten (10) days or fails to show cause, the trial court shall reinstate the vacated judgment. If upon the movant's showing the trial court is satisfied that the movant's failure to appeal should not be deemed a waiver of his right to do so, it shall grant the movant an additional thirty (30) days in which to file notice of his appeal.*

The foregoing amendment should assure that the matter is pursued for the necessary final appellate resolution.

Returning to the case before us, as a somewhat odd wrinkle, the trial court, notwithstanding *Hicks*, addressed Hollon's IAAC claim and denied relief because it concluded appellate counsel had performed adequately. The Court of Appeals invoked *Hicks* and, correctly under then-existing precedent, declined any further merits review. It would therefore appear to be unnecessary to remand this case to the trial court as we would ordinarily because that court has already addressed the IAAC claims. However, the Commonwealth notes that the trial court did not have before it the appellate brief filed by Hollon's counsel, relying instead on Hollon's present counsel's representations regarding the issues raised in Hollon's appeal. This illustrates the importance of a defendant appending to the RCr 11.42 motion copies of the briefs filed in his or her matter-of-right appeal in order for the trial court to ascertain whether the allegedly omitted meritorious appellate issue was, indeed, not raised. Nevertheless, it appears there was never any dispute about the fact that the specific issues upon which Hollon now premises his IAAC claim were not included in his matter-of-right appeal. Under these circumstances, we find no reason to remand this case to the trial court to secure and examine the direct appeal briefs. Our remand, therefore, is not to the trial court, as might have been expected, but to the Court of Appeals so that it may now take up the merits of Hollon's RCr 11.42 appeal.

### CONCLUSION

In sum, although in both *Evitts v. Lucey* and *Smith v. Robbins* the United States Supreme Court did not have before it a case in which appellate counsel's effectiveness was challenged following an appellate court's review of the defendant's appeal on the merits, the right to effective appellate counsel which the Court delineates in those cases clearly extends beyond the mere filing of a timely merits brief. Simply put, these cases require that an appellate brief itself satisfy basic professional norms pursuant to the standard enunciated in *Strickland v. Washington* and ap-

---

6. The vacated judgment alone would not entitle the defendant to any relief because it is not a judgment of acquittal. The charges would simply be unresolved.

plied to an appellate ineffective assistance claim in *Smith v. Robbins*. We hereby abandon, therefore, the distinction we drew in *Hicks v. Commonwealth* between ineffective appellate counsel cases in which a merits brief was filed and the merits were considered and those in which they were not. The former, the *Hicks*-type claim, may, as of the rendering of this Opinion, be pursued in the trial court of conviction under RCr 11.42 subject to the prospective application rule outlined above and to the noted limitation of IAAC claims to an issue or issues omitted in the direct appeal. RCr 11.42, one of the remedies provided in what is meant to be Kentucky's comprehensive scheme of post-conviction review, readily embraces these IAAC claims, and does so with much less disruption to post-conviction proceedings generally than would a new procedural rule singling out IAAC claims for special treatment in the appellate courts. Accordingly, we reverse the Opinion of the Court of Appeals and remand to that Court for further proceedings consistent with this Opinion.

MINTON, C.J.; CUNNINGHAM, SCHRODER, and VENTERS, JJ., concur. NOBLE, J., concurs by separate opinion. SCOTT, J., dissents by separate opinion.

NOBLE, J., concurring opinion:

While I am fully cognizant that § 110 of the Kentucky Constitution requires review of sentences of more than 20 years by the Supreme Court, this Court is now recognizing a new right—the right to raise ineffective assistance of appellate counsel— which necessitates originating process that will efficiently deal with issues omitted on appeal due to defective performance of appellate counsel, and consequently this

Court views these omitted issues of appeal as collateral rather than direct, and thus reviewable as part of an IAAC claim before the Court of Appeals.

SCOTT, J., dissenting opinion:

I must respectfully dissent from the majority's adoption of a new Ineffective Assistance of Appellate Counsel Rule. I do so because of the many new complexities it will present.

Federal courts already review such allegations in federal habeas corpus proceeding and, where appropriate, grant or insure appropriate relief. *See Wilson v. Parker*, 515 F.3d 682, 706–08 (6th Cir. 2008). To adopt a broader rule now will necessarily open up our RCr 11.42 relief to every defendant who, years ago, *failed to raise* a later-validated right—raised and won by someone else years later as society's perspective changed and evolved. Moreover, as courts tend to view *new* decisions as ones that should have been made *years ago*, we will tend more and more to open up old cases on new issues that would *not* have been, or were not, validated in their day, solely on the supposition that appellate counsel of the time was ineffective for not preserving the issue then, a point that, most often, *will not* have been true for the time. My concern is: where will this new concept of ineffective assistance of appellate counsel end?

As a case in point, I cite this Court's continuing, decades-old evolution in regard to the *Merritt/Kennedy* line of cases dealing with the operability of firearms.[7]

Our state court system and its personnel are burdened more and more each year by increasing legislation and appellate court decisions expanding their jurisdiction and

---

7. *Merritt v. Commonwealth*, 386 S.W.2d 727 (Ky.1965) and *Kennedy v. Commonwealth*, 544 S.W.2d 219 (Ky.1976) were ultimately over- ruled by *Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky.2010).

responsibilities while their budgets and personnel dwindle. Thus, I fear that—compared to the increases of their burdens before—this decision will be the equivalent of a *flood*, the effect of which will be felt for many years. It is for this reason—and the fact that we already have a system in place to address these issues under the federal habeas corpus standards—that I must respectfully dissent to this expansion, as well as its progeny to come.